[840 NYS2d 263]

ST. JOSEPH HOSPITAL OF CHEEKTOWAGA et al., Appellants, v ANTONIA C. NOVELLO, as New York State Health Commissioner, et al., Respondents.

Fourth Department, July 18, 2007

## APPEARANCES OF COUNSEL

*Phillips Lytle LLP*, Buffalo (*Kenneth A. Manning* of counsel), for plaintiffs-appellants.

*Andrew M. Cuomo, Attorney General*, Albany (*Victor Paladino* of counsel), for defendants-respondents.

## OPINION OF THE COURT

CENTRA, J.

At issue on this appeal is the constitutionality of certain Enabling Legislation, i.e., section 31 of part E of chapter 63 of the Laws of 2005, adding part K (hereafter, Legislation). Pursuant to the Legislation, the Legislature created defendant New York State Commission on Health Care Facilities in the 21st Century (Commission) and charged it with "examining the supply of general hospital and nursing home facilities, and recommending changes that will result in a more coherent, streamlined health care system in the state of New York" (Legislation § 1). The Commission recommended the closing of plaintiff St. Joseph Hospital of Cheektowaga (St. Joseph). We note at the outset that the issue whether the Commission's recommendation to close St. Joseph was rational is not before us. Rather, the sole issue before us on this appeal, as framed by the parties, is whether the Legislation is constitutional, and we conclude that it is.

## II

Plaintiff Catholic Health System, Inc. (CHS) is a not-for-profit corporation that operates an integrated network of health care ministries throughout western New York, including St. Joseph. Plaintiffs commenced this action seeking injunctive,

declaratory, and other relief, and they thereafter moved for summary judgment seeking a declaration pursuant to several causes of action and seeking a permanent injunction enjoining defendants from taking any steps to revoke or rescind St. Joseph's certificate of operation (operating certificate), to close St. Joseph, or otherwise to interfere with St. Joseph's ongoing operations and business. Defendants cross-moved for summary judgment declaring that the Legislation does not violate the New York and United States Constitutions and dismissing the remainder of the amended complaint. Supreme Court denied plaintiffs' motion and granted defendants' cross motion, stating that the amended complaint "is in all respects dismissed" (*St. Joseph Hosp. of Cheektowaga v Novello*, 15 Misc 3d 333, 349 [2007]). Although the court properly declared that the Legislation is constitutional, it erred in dismissing the amended complaint "in all respects" (*id.*). We therefore conclude that the order and judgment should be modified by vacating the provision dismissing those causes of action seeking a declaratory judgment (*see Boyd v Allstate Life Ins. Co. of N.Y.*, 267 AD2d 1038, 1039 [1999]).

### III

The Legislature created the Commission to maximize return from resources that have been invested in the health care system by aligning resources "so that excess capacity is minimized" (Legislation § 1). The Legislation set forth nine specific factors for the Commission to consider in completing its task. A regional advisory committee (RAC) was formed for each of six regions, and each RAC was charged with conducting public hearings within its region and developing "recommendations for reconfiguring its region's general hospital and nursing home bed supply to align bed supply with regional and local needs" (Legislation § 7 [d]). The RACs were to transmit their recommendations to the Commission, including their recommendations concerning which facilities should be closed, resized, consolidated, converted, or restructured.

The Legislation further directed the Commission to transmit to the Governor a report containing its final recommendations on or before December 1, 2006. The recommendations of the Commission would not be implemented unless the Governor transmitted the Commission's report with his written approval to the Commissioner of Health and transmitted a message to the Legislature indicating his approval of the recommendations

on or before December 5, 2006. In addition, the recommendations would not be implemented if, after receiving the message from the Governor, "a majority of the members of each house of the legislature vote to adopt a concurrent resolution rejecting the recommendations of the [C]ommission . . . in their entirety" by December 31, 2006 (Legislation § 9 [b] [ii]).

On November 28, 2006, the Commission sent its report to Governor Pataki recommending, inter alia, the closing of St. Joseph. On November 30, 2006, the Governor transmitted a message to the Legislature indicating that he approved the Commission's report. The Legislature did not adopt a resolution rejecting the recommendations of the Commission by December 31, 2006, and the recommendations therefore became effective.

## IV

In order to prevail on their challenge to the facial constitutionality of the Legislation, plaintiffs "must surmount the presumption of constitutionality accorded to legislative enactments by proof 'beyond a reasonable doubt' " (*Matter of Moran Towing Corp. v Urbach*, 99 NY2d 443, 448 [2003]).

▬ Plaintiffs first contend that the Legislation violates their rights to procedural and substantive due process pursuant to the Fourteenth Amendment of the United States Constitution and article I, § 6 of the New York Constitution. We agree with plaintiffs that they have a protected property interest in St. Joseph's operating certificate (*see generally Bell v Burson*, 402 US 535, 539 [1971]; *Honey Dippers Septic Tank Servs. v Landi*, 198 AD2d 402 [1993]). We conclude, however, that the Legislation satisfies the minimum procedural due process requirements (*see Morgenthau v Citisource, Inc.*, 68 NY2d 211, 221 [1986]). "It is not the role of the courts to rewrite statutes that have been promulgated by the legislative branch of government nor is it our role to comment on the wisdom of the statute" (*id.* at 223). The determination concerning "what process is constitutionally due . . . [is] based on the balancing of three factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure" (*Matter of Uniform Firefighters of Cohoes, Local 2562, IAFF, AFL-CIO v City of Cohoes*, 94 NY2d 686, 691-692 [2000]; *see Mathews v Eldridge*, 424 US 319, 334-335 [1976]; *LaRossa, Axenfeld & Mitchell v Abrams*, 62 NY2d 583, 588 [1984]).

Plaintiffs' private interests involved are substantial inasmuch as plaintiffs face the loss of St. Joseph's operating certificate. The interest of the State in the matter is also substantial, however, inasmuch as the State must attempt to contain rising Medicaid costs while still maintaining adequate health care facilities. "[D]ue process is a flexible constitutional concept calling for such procedural protections as a particular situation may demand" (*LaRossa, Axenfeld & Mitchell*, 62 NY2d at 588). Plaintiffs were aware of the task of the Commission and thus were aware that the closing of a CHS hospital was a possibility. Plaintiffs were given the opportunity to appear before the western RAC at a public hearing, and they in fact did so. Plaintiffs also were entitled to submit unlimited documents to the western RAC to assist the Commission in its task, and plaintiffs took advantage of that procedure by submitting various documents. Plaintiffs contend that the Commission should have informed them that St. Joseph was targeted for closure and then held an extensive hearing to discuss that prospect. That additional procedural safeguard would create an enormous fiscal and administrative burden. In the western region alone, the Commission recommended, inter alia, the closing of two hospitals, the downsizing of numerous other hospitals and nursing homes, and the joining under a single unified governance structure the facilities controlled by the Erie County Medical Center Corporation and Kaleida Health. We thus conclude that defendants met their burden on their cross motion with respect to plaintiffs' right to procedural due process by establishing that the procedure set forth in the Legislation, i.e., conducting public hearings to elicit comments from all of the health care facilities and affording the health care facilities the opportunity to submit unlimited documents, was adequate and sufficient to protect that right.

We further conclude that defendants met their burden on their cross motion with respect to the contention of plaintiffs that they were denied their right to substantive due process. The denial of the right to substantive due process occurs only when "the governmental action was wholly without legal justification" (*Bower Assoc. v Town of Pleasant Val.*, 2 NY3d 617, 627 [2004]) and, importantly, " 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense' " (*id.* at 628, quoting *Cuyahoga Falls v Buckeye Community Hope Foundation*, 538 US 188, 198 [2003]). Plaintiffs acknowledge that the Commission's task in "right-sizing" health

care was a legitimate government concern, but they contend that the Commission did not have a compelling interest to achieve that goal by closing health care facilities. The test, however, is not whether the State, through the Commission, had a compelling interest in closing health care facilities. Rather, the test is whether the Commission's action in recommending the closure of a health care facility was without legal justification, or "outrageously arbitrary" (*Natale v Town of Ridgefield*, 170 F3d 258, 263 [1999]).

We conclude that plaintiffs were not deprived of their right to substantive due process because it cannot be said that the Commission's recommendation to close St. Joseph was without legal justification, nor was it "outrageously arbitrary" (*id.*). The Commission was charged with the task of "examining the supply of general hospital and nursing home facilities, and recommending changes that will result in a more coherent, streamlined health care system in the state of New York." To accomplish that task, the western RAC was charged with making "recommendations for reconfiguring its region's general hospital and nursing home bed supply to align bed supply with regional and local needs." The Legislation contemplated that some facilities should be closed and others resized, consolidated, converted, or restructured. Thus, the Commission's recommendation to close St. Joseph was in keeping with the purpose of the creation of the Commission.

V

Plaintiffs next contend that the Legislation violates the Presentment Clause of the New York Constitution (NY Const, art IV, § 7) and the separation of powers doctrine based on the legislative veto provision of the Legislation. Pursuant to the Legislation, the Commissioner of Health is required to implement the recommendations of the Commission unless the Governor does not approve them or the Legislature enacts a concurrent resolution rejecting them, which is the equivalent of a legislative veto. Plaintiffs contend that the legislative veto provision runs afoul of the Presentment Clause because a resolution rejecting the recommendations would not be presented to the Governor. Plaintiffs further contend that the legislative veto violates the separation of powers doctrine because the Commission's recommendations were subject to the disapproval of the Legislature *after* prior approval by the Governor, which is "a total inversion of the legislative process."

Plaintiffs contend that the entire Legislation is invalid based on the legislative veto. We conclude, however, that the legislative veto provision is severable from the Legislation. Thus, even if the legislative veto provision is unconstitutional, that provision does not invalidate the remainder of the Legislation.

The legislative veto provision may be severed from the Legislation unless, as plaintiffs contend, it is determined that the Legislature would not have enacted the Legislation without the legislative veto (*see Alaska Airlines, Inc. v Brock*, 480 US 678, 685 [1987]; *CWM Chem. Servs., L.L.C. v Roth*, 6 NY3d 410, 423 [2006]). Here, plaintiffs contend that it is inconceivable that the Legislature intended to grant the Commission such powers if the recommendations of the Commission were not subject to subsequent review by the Legislature. We cannot agree.

The Legislation contains a severability clause providing that, if any part of the act is adjudged to be invalid, "such judgment shall not affect, impair, or invalidate the remainder thereof . . . ." (Legislation § 10.) The severability clause further states that "[i]t is hereby declared to be the intent of the legislature that this act would have been enacted even if such invalid provisions had not been included herein." (*Id.*) The inclusion of a severability clause creates a presumption that the Legislature "did not intend the validity of the statute in question to depend on the validity of the constitutionally offensive provision" (*Alaska Airlines*, 480 US at 686). "[U]nless there is strong evidence" that the Legislature intended otherwise, the unconstitutional provision is severable (*id.*).

Here, the requisite "strong evidence" that the Legislature intended otherwise is plainly lacking. The Legislature enacted the Legislation with specific directives to the Commission and some control over the Commission through appointments. The Legislature set forth nine specific factors that the Commission was required to consider in making its recommendations. The Legislation is also specific with respect to the hearings that were required and the input the Commission was to receive from each RAC. Some members of the Commission and the RAC members were appointed by the temporary president of the senate and the speaker of the assembly. Because of the Legislature's specific directives and appointments to the Commission, we are compelled to reject plaintiffs' contention that it is inconceivable that the Legislature intended the Commission to make its recommendations without those recommendations being subject to subsequent review by the Legislature.

## VI

■ Plaintiffs further contend that the Commission's recommendations are invalid under the Free Exercise Clause of the New York Constitution (NY Const, art I, § 3). The Court of Appeals has held that "when the State imposes 'an incidental burden on the right to free exercise of religion' [a court] must consider the interest advanced by the legislation that imposes the burden, and that '[t]he respective interests must be balanced to determine whether the incidental burdening is justified' " (*Catholic Charities of Diocese of Albany v Serio*, 7 NY3d 510, 525 [2006], *rearg denied* 8 NY3d 866 [2007]). In determining whether legislation violates the Free Exercise Clause, "substantial deference is due the Legislature, and . . . the party [challenging the legislation] bears the burden of showing that the challenged legislation, as applied to that party, is an unreasonable interference with religious freedom" (*id.*). Here, defendants met their burden on their cross motion and plaintiffs failed to raise an issue of fact whether the Legislation is an unreasonable interference with religious freedom. The Legislation did not target Catholic hospitals for closing, and there is nothing in the Legislation itself that imposes any restrictions on religious freedom.

## VII

Finally, plaintiffs contend that the Commission's recommendations violate the Contract Clause of the United States Constitution (US Const, art I, § 10 [1]). Plaintiffs contend that, because St. Joseph is required to close, there will be substantial impairment of CHS contracts with various vendors, suppliers, and employees.

■ We conclude that the Legislation does not violate the Contract Clause. "[N]ot all impairments of contract are unconstitutional" (*Association of Surrogates & Supreme Ct. Reporters Within City of N.Y. v State of New York*, 79 NY2d 39, 46 [1992]). A court must first determine whether there was a substantial impairment of a contractual relationship (*see 19th St. Assoc. v State of New York*, 79 NY2d 434, 442 [1992]; *Association of Surrogates & Supreme Ct. Reporters Within City of N.Y.*, 79 NY2d at 46). If there was, then the impairment "must be examined in light of the nature and purpose of the State legislation, and will be upheld if it is reasonable and necessary to accomplish a legitimate public purpose" (*Association of Surrogates & Supreme Ct. Reporters Within City of N.Y.*, 79 NY2d at 46; *see United*

*States Trust Co. of N. Y. v New Jersey*, 431 US 1, 22 [1977], *reh denied* 431 US 975 [1977]; *Matter of Subway-Surface Supervisors Assn. v New York City Tr. Auth.*, 44 NY2d 101, 109 [1978]). "[C]ourts generally defer to legislative judgment as to necessity and reasonableness" (*Association of Surrogates & Supreme Ct. Reporters Within City of N.Y.*, 79 NY2d at 46).

Here, the purpose of the Legislation was for the Commission to examine the current supply of hospital and nursing home facilities and to reconfigure the supply to align with the demand or need. The Legislature determined that minimizing excess capacity was necessary to promote stability and efficiency in the health care system. That is a legitimate public purpose, and the task of the Commission in recommending facilities to close, downsize, or consolidate was both necessary and reasonable to accomplish that purpose.

### VIII

Accordingly, although the court properly declared that the Legislation is constitutional, we conclude that the order and judgment should be modified by vacating the provision dismissing those causes of action seeking a declaratory judgment.

FAHEY, J. (dissenting). I respectfully dissent because I cannot agree with the majority that the Enabling Legislation at issue, i.e., section 31 of part E of chapter 63 of the Laws of 2005, adding part K (hereafter, Legislation) is constititutional. The manner in which the Legislation has been implemented and the procedural history of this case have been set out by the majority and I shall not repeat them here. I disagree with the majority on two grounds and thus conclude that the statute should be declared unconstitutional on those grounds. I agree with plaintiffs that defendant New York State Commission on Health Care Facilities in the 21st Century (Commission) violated their right to procedural due process, and I further agree with plaintiffs that the Legislation violates the Presentment Clause of the New York Constitution and the separation of powers doctrine.

### I

The Legislation provides for six regional advisory committees (RACs) to hold public hearings and then to make recommendations to the Commission. The Commission would then determine which hospitals were to lose their certificates of operation

(operating certificates). The Commission recommended changes with respect to the operation of 57 hospitals, approximately one quarter of the state's total number of hospitals. It is uncontested that "[e]ach interested party, including [plaintiff Catholic Health System, Inc.] (CHS), was limited to a ten (10) minute address" at a public hearing conducted by the western RAC, and plaintiffs also submitted numerous documents to the RAC. The actual decision-making body, the Commission, did not hear testimony from any of the affected health care providers or conduct any public hearings. Thus, none of the parties potentially affected by the recommendations of the RACs was afforded an opportunity to make a presentation to the final decision-making body.

At stake is the continued operation of plaintiff St. Joseph Hospital of Cheektowaga (St. Joseph) that is in fact a solvent health care provider. For the first three quarters of 2006, St. Joseph operated at a surplus of approximately $2 million. It serves approximately 30,000 patients per year and employs 800 people.

Pursuant to the Legislation, plaintiffs were provided with the opportunity to express their opinions at a public hearing and through unlimited document submissions to the western RAC, which then presented its recommendations to the Commission. Significantly, none of the hospitals in the region covered by the western RAC was told which were to be closed prior to the public hearing held by the western RAC. St. Joseph did not receive notice of its potential closing prior to the announcement of all hospital closings recommended by the Commission. Further, St. Joseph was given no opportunity to be heard by the Commission before it made its decision.

## II

In determining whether there was a violation of the right to procedural due process under the United States Constitution, a court must make a two-part inquiry. First, the court must consider whether there is in fact a constitutionally protected property interest and, if so, the court must then determine whether constitutionally sufficient due process has been provided with respect to the protected property interest (see Logan v Zimmerman Brush Co., 455 US 422, 428 [1982]). "Many controversies have raged about the cryptic and abstract words of the Due Process Clause, but there can be no doubt that at a minimum they require that deprivation of life, liberty

or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case" (*Mullane v Central Hanover Bank & Trust Co.*, 339 US 306, 313 [1950]). The majority correctly states the minimum standard for ensuring procedural due process in New York, as set forth in *Matter of Uniform Firefighters of Cohoes, Local 2562, IAFF, AFL-CIO v City of Cohoes* (94 NY2d 686, 691-692 [2000]).

Neither the parties nor Supreme Court contested the fact that St. Joseph had a constitutionally protected property interest in its operating certificate. Likewise, the majority concludes that plaintiffs have a protected property interest in St. Joseph's operating certificate, but further concludes that the procedures provided by the Legislation are constitutionally sufficient under the United States Constitution and the New York Constitution.

The majority's conclusion is that a government's interest in restructuring the health care system can override the minimal requirements of notice and a hearing. I do not agree that this additional safeguard would create an overwhelming burden for the government. The history of the procedure governing such closings supports this conclusion.

Prior to the enactment of the Legislation, section 2806 (6) (a) of the Public Health Law set forth the procedure to be followed by respondent New York State Health Commissioner (Health Commissioner) in revoking a hospital's operating certificate. That section afforded the Health Commissioner the right to

"revoke a hospital['s] operating certificate, after taking into consideration the total number of beds necessary to meet the public need . . . and after finding that . . . revoking the operating certificate of such facility would be within the public interest in order to conserve health resources by restricting the number of beds and/or the level of services to those which are actually needed."

The remainder of section 2806 (6) sets forth a detailed procedure to be followed by the Health Commissioner, including providing notice and a hearing, before revoking any operating certificate.

Public Health Law § 2806 (2) provides a hospital with a statutory right to notice and a hearing before its operating certificate may be revoked. In providing the protections afforded by that statute, the Legislature wrote: "It is the intention of the legislature to provide a mechanism to protect the rights of patients to proper health care while taking due consideration of

the due process and property rights of the operators of such facilities'' (L 1978, ch 713, § 1). The Legislature itself clearly recognized that hospital operators have property rights in their operating certificates and that they are entitled to due process when those rights are threatened.

Of course, this is the case with all manner of licenses that are issued by the State of New York (*see generally O'Brien v O'Brien*, 66 NY2d 576, 583-584 [1985] [medical license]; *Matter of Moore v Macduff*, 309 NY 35, 38-39 [1955] [driver's license]; *Matter of Bender v Board of Regents of Univ. of State of N.Y.*, 262 App Div 627, 631 [1941] [dental license]). Thus, the relevant case law and the Public Health Law clearly indicate that CHS has a significant property interest in St. Joseph's operating certificate.

The Legislation at issue herein, specifically sections 9 and 11, suspends the rights to notice and the hearing guaranteed by Public Health Law § 2806 (2) for a temporary period of time. The suspension of those rights is to remain in effect until June 2008, at which time St. Joseph is to be closed. In essence, the Legislature is suspending a party's right to procedural due process in order to implement a policy decision on a one-time basis.

Notice, to be meaningful, must be actual notice. To close a health care facility without at least allowing the facility to explore the basis for the government's decision is a violation of constitutionally protected due process rights. St. Joseph should have been given a pretermination notice and an opportunity for a hearing. That is not to say that the Commission is required to conduct adversarial proceedings. Rather, it must publicly state its recommendations and allow those affected to explore the basis for its decisions through a hearing process. I recognize that an additional round of hearings by the Commission thus would have been required but, given the serious nature of the Commission's decision, this is the minimum necessary to satisfy plaintiffs' constitutional procedural due process rights. I am compelled to conclude that the Legislation is unconstitutional inasmuch as the Legislature suspended the requirements for revocation of a hospital's operating certificate set forth in Public Health Law § 2806 without providing even minimal procedural due process protections.

## III

Further, the implementation of the Commission's recommendations violates the Presentment Clause of the New York Constitution as well as the separation of powers doctrine. The

Legislation requires the Health Commissioner to carry out the Commission's recommendations unless the Governor does not approve them, which did not occur here, or the Legislature adopts a "concurrent resolution" rejecting them (Legislation § 9 [b] [ii]). The Legislature's concurrent resolution is a veto of the Commission's recommendations and must be a veto of the entirety of the Commission's recommendations.

It is apparent that the Legislation inverts the usual procedure utilized for the passage of a bill. According to the usual procedure, a bill is presented to the Governor for his or her signature or veto after passage by the Senate and the Assembly. Should the Governor sign the bill, it becomes law; should the bill be vetoed, the veto may be overridden by a two-thirds vote of the Legislature. Here, the Legislation creates a process that allows the recommendations of the Commission to become law without ever being presented to the Governor after the action of the Legislature. Further, the Governor must transmit his or her message of approval of the Commission's recommendations *before* action by the Legislature instead of *after* action by the Legislature. The Legislation then allows for a veto of the Governor's proposal by a majority vote of the Legislature rather than by a two-thirds vote, and the Governor has no right to veto such legislative action. Stated differently, the Legislature has in effect assumed the veto powers of the Governor.

IV

Although, as I have concluded, section 9 of the Legislation violates both the Presentment Clause and the separation of powers doctrine, I further note that section 10 contains a severability clause providing that,

> "[i]f any clause, sentence, paragraph, subdivision, section or part of this act shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair, or invalidate the remainder thereof, but shall be confined in its operation to the clause, sentence, paragraph, subdivision, section or part thereof directly involved in the controversy in which such judgment shall have been rendered. It is hereby declared to be the intent of the legislature that this act would have been enacted even if such invalid provisions had not been included herein."

A severability clause creates the presumption that the Legislature intended the act to be divisible (*see Alaska Airlines,*

*Inc. v Brock*, 480 US 678, 686 [1987]; *National Adv. Co. v Town of Niagara*, 942 F2d 145, 148 [1991]). New York courts, however, have declared an entire act unconstitutional even though it contained a severability clause (*see e.g. Matter of New York State Superfund Coalition v New York State Dept. of Envtl. Conservation*, 75 NY2d 88, 94 [1989]). In determining whether to give effect to the severability clause, courts must look to the intent of the Legislature in including the clause in the act. This Court has before it the affidavit of the former Majority Leader of the New York State Assembly who oversaw the debate and voting on this issue. He stated therein that he believed that neither he nor his colleagues would have voted for this legislation had it not contained the veto provision. I can only conclude therefrom that the inclusion of the veto provision permeated all the decisions made by the Legislature in enacting the Legislation. Thus, the severability clause should not be given effect because the Legislature would not have enacted the Legislation without the veto (*see Alaska Airlines*, 480 US at 685; *CWM Chem. Servs., L.L.C. v Roth*, 6 NY3d 410, 423 [2006]).

In refusing to credit the affidavit of the former Majority Leader, the court relied on *Civil Serv. Empls. Assn. v County of Oneida* (78 AD2d 1004, 1005 [1980], *lv denied* 53 NY2d 603 [1981]), in which this Court wrote that "postenactment statements or testimony by an individual legislator, even a sponsor, [are] irrelevant and [were] properly excluded." In failing to rely on the affidavit of the former Majority Leader, the majority implicitly concludes that postenactment statements cannot be considered. Such a conclusion, however, ignores the fact that "[t]his postenactment rule does not apply . . . when such testimony might be appropriate in extraordinary circumstances, such as when the constitutionality of a particular measure is challenged and the existence of a discriminatory purpose, or motivation, becomes relevant" (*id.*, citing *Arlington Heights v Metropolitan Housing Development Corp.*, 429 US 252 [1977]). Although this case does not involve the existence of any discriminatory purpose, the circumstances are clearly "extraordinary" (*id.*). The magnitude of the deprivation and the minimal nature of the protection offered by the Legislation to the property interest of St. Joseph demand that this Court apply the exception to the postenactment rule and consider the affidavit of the former Majority Leader.

Given that the veto provision is not severable from the remainder of the Legislation, I conclude that the entire Legisla-

tion is unconstitutional for the further reasons that it violates the Presentment Clause and the separation of powers doctrine. Further, even assuming, arguendo, that the legislative veto provision was severable, I conclude that the Legislation may nevertheless constitute an improper delegation of legislative authority to the Commission (*see generally Boreali v Axelrod*, 71 NY2d 1, 9-11 [1987]; *Matter of Levine v Whalen*, 39 NY2d 510, 515-516 [1976]).

## V

The decision whether to close a hospital can never be easy, and the Legislature and the Governor were faced with difficult choices. The procedures for approval of the Commission's recommendations set forth in the Legislation do not, however, provide the minimal procedural due process rights to which plaintiffs are entitled, and the Legislation violates the Presentment Clause of the New York Constitution and the separation of powers doctrine. Accordingly, I would reverse the order and judgment, deny defendants' cross motion for summary judgment, reinstate the amended complaint, grant plaintiffs' motion for summary judgment in part, grant judgment in favor of plaintiffs declaring that the Legislation is unconstitutional and grant the injunctive relief sought.

SCUDDER, P.J., LUNN and PERADOTTO, JJ., concur with CENTRA, J.; FAHEY, J., dissents and votes to reverse in accordance with a separate opinion.

It is hereby ordered that the order and judgment so appealed from be and the same hereby is modified on the law by vacating the provision dismissing those causes of action seeking a declaratory judgment and as modified the order and judgment is affirmed without costs.