Egan Jr., J.
Appeal from an order of the Supreme Court (McNamara, J.), entered July 12, 2012 in Albany County, which, among other things, granted plaintiffs cross motion for summary judgment declaring certain portions of Insurance Law § 4308 (j) to be unconstitutional.
Plaintiff is a not-for-profit health insurer that offers various types of health insurance to its subscribers, including — insofar as is relevant here — community-rated, large-group insurance and health maintenance organization policies. Historically, insurers such as plaintiff were required to obtain prior approval from the Superintendent of Insurance[1] before increasing or decreasing premium rates (see Insurance Law former § 4308 [c] [1]; Matter of Excellus Health Plan v Serio, 2 NY3d 166, 168-169 [2004]). In 1995, however, the Legislature replaced this system with a “file and use” methodology, whereby insurers could increase or decrease premiums at their discretion, so long as the “anticipated incurred loss ratio” for the affected insurance pool fell within statutory minimum and maximum percentages (Matter of Excellus Health Plan v Serio, 2 NY3d at 169 [internal quotation marks omitted]; see Insurance Law former § 4308 [g], [h], [j], as added by L 1995, ch 504, § 10).[2] If the actual loss ratio fell below the statutory minimum, the insurer was required to “issue a refund to its subscribers or credit a dividend against future premiums”; if the actual loss ratio exceeded the statutory maximum, the insurer “increase [d] its premium rates accordingly” (Matter of Excellus Health Plan v *1218 Serio, 2 NY3d at 169; see Insurance Law former § 4308 [h] [2], [3]).
In response to growing concerns that steady increases in premium rates were making health insurance less affordable, the Legislature amended Insurance Law § 4308 again in 2010 (see L 2010, ch 107, § 2) — reinstating the prior approval requirement and setting the minimum loss ratio for all coverage pools at 82% (see Insurance Law § 4308 [b], [c], [j]). Although the amendment was effective June 8, 2010, the 82% minimum loss ratio applied to “[a]ll community rated contracts . . . issued or in effect during calendar year [2010]” (Insurance Law § 4308 03).
In June 2011, and pursuant to the requirements of Insurance Law § 4308 (h) (1), plaintiff submitted its actual loss ratio report to defendant New York State Insurance Department (now defendant New York State Department of Financial Services). Insofar as is relevant here, that report reflected that plaintiffs minimum loss ratio for its large-group coverage pools fell below the 82% requirement. As a result, defendant Superintendent of Financial Services directed that plaintiff issue refunds or credits totaling $3,349,976 to policyholders enrolled in community-rated large-group contracts.
Plaintiff thereafter commenced this declaratory judgment action seeking a declaration that the 2010 amendment to Insurance Law § 4308 (j) — insofar as it applied to contracts entered into with plaintiffs large-group subscribers prior to June 8, 2010 — violated plaintiffs rights under the Contracts Clause of the US Constitution, as well as its state and federal due process rights. The parties thereafter agreed that no material issues of fact existed and, further, that they would cross-move for summary judgment in lieu of defendants’ answer. Upon review of the parties’ written submissions, Supreme Court declared that the provisions of Insurance Law § 4308 (j) “presented] an unconstitutional impairment of [plaintiffs] contract rights insofar as applied to such contracts formed or in effect prior to the date of enactment,” i.e., June 8, 2010. This appeal by defendants ensued.
US Constitution, article I, § 10 provides that “[n]o [s]tate shall . . . pass any . . . [l]aw impairing the [obligation of [contracts.” The prohibition contained in the Contract Clause, however, is not absolute, as states “retain the power to safeguard the vital interests of [their] people” (19th St. Assoc. v State of New York, 79 NY2d 434, 442 [1992] [internal quotation marks and citation omitted]; see Sal Tinnerello & Sons, Inc. v Town of Stonington, 141 F3d 46, 52 [2d Cir 1998], cert denied *1219 525 US 923 [1998]; Schantz v O’Sullivan, 11 AD3d 22, 24 [2004], appeal dismissed 3 NY3d 767 [2004]). “Thus, the [s]tate may impair [private] contracts by subsequent legislation or regulation so long as it is reasonably necessary to further an important public purpose and the measures taken that impair the contract are reasonable and appropriate to effectuate that purpose” (Schantz v O’Sullivan, 11 AD3d at 25 [internal quotation marks and citations omitted]; see 19th St. Assoc. v State of New York, 79 NY2d at 443). Analysis of a claimed Contract Clause violation “require[s] consideration of three factors: (1) whether the contractual impairment is in fact substantial; if so, (2) whether the law serves a significant public purpose, such as remedying a general social or economic problem; and, if such a public purpose is demonstrated, (3) whether the means chosen to accomplish this purpose are reasonable and appropriate” (Sal Tinnerello & Sons, Inc. v Town of Stonington, 141 F3d at 52; see 19th St. Assoc. v State of New York, 79 NY2d at 442-443; St. Joseph Hosp. of Cheektowaga v Novella, 43 AD3d 139, 147 [2007], appeal dismissed 9 NY3d 988 [2007], lv denied 10 NY3d 702 [2008]; Schantz v O’Sullivan, 11 AD3d at 25-26).
In support of its motion for summary judgment, plaintiff argued that the proposed $3.3 million refund ordered with respect to its large-group coverage pool represented a substantial impairment of its contracts with those subscribers. The flaw in plaintiffs argument on this point is that the $3.3 million figure is based upon the 12-month period ending December 31, 2010, while the relevant inquiry is how much of that figure is attributable to the applicable period of retroactivity — January 1, 2010 to June 8, 2010. On this point, the record does not reflect what portion of the $3.3 million refund/credit is assignable to contracts entered into before the effective date of the amendment. Absent such proof, there is no basis in the record upon which to conclude that retroactive application of the statutory amendment resulted in a substantial impairment of plaintiffs contract rights.[3] Having failed to satisfy the first prong of the Contract Clause inquiry, plaintiffs cross motion for summary judgment must be denied.[4]
We reach a similar conclusion regarding defendants’ claimed entitlement to summary judgment. Even assuming, as Supreme *1220 Court found, that defendants have identified a legitimate public purpose in enacting the statutory amendment — namely, encouraging the state’s citizens to retain private insurance and preventing a rising number of participants in the Medicaid program — defendants failed to demonstrate that retroactive application of the amendment was a reasonable and appropriate means by which to achieve this objective. Notably, although defendants assert that retroactive application of the amendment would generate a $70 million savings in the state’s 2010-2011 fiscal year, defendants failed to break down how much of the anticipated savings would flow from contracts entered into between January 1, 2010 and June 8, 2010.[5] Absent such proof, defendants necessarily failed to demonstrate that retroactive application of the amendment was a reasonable and appropriate means of achieving the desired savings and/or encouraging plaintiffs subscribers to retain their private insurance. Accordingly, despite their protestations to the contrary, defendants have not demonstrated their entitlement to summary judgment on this record.
As a final matter, both parties argue that the actual dollar figures involved — be it the $3.3 million refund/credit or the $70 million in anticipated savings — are irrelevant in the sense that our Contract Clause and Due Process analyses must focus upon their respective (and reasonable) expectations. While we agree that such inquiries do not necessarily distill to a numbers-crunching exercise, the fact remains that the parties elected to base their claims here upon actual dollar amounts, which they then failed to allocate to the relevant period at issue (January 1, 2010 to June 8, 2010) — thereby compelling denial of their respective motions.
Rose, J.E, Spain and Garry, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as granted plaintiffs cross motion for summary judgment; cross motion denied; and, as so modified, affirmed.

. The Department of Insurance is now the Department of Financial Services and, in turn, the Superintendent of Insurance is now the Superintendent of Financial Services (see L 2011, ch 62, § 1, part A, § 18; Financial Services Law §§ 102, 202, as added by L 2011, ch 62, § 1, part A, § 1).

. The 1995 amendment set the minimum loss ratio at 85% for individual coverage pools and 75% for small-group coverage pools (see Insurance Law former § 4308 [g] [1]; [j]). Although the amendment did not address large-group coverage pools, a preexisting regulation required a minimum loss ratio of 65% for such pools (see 11 NYCRR 52.45 [f]).

. We reach this conclusion notwithstanding the parties’ stipulation that no material issues of fact exist.

. For these reasons, plaintiffs due process argument, which implicates many of the same factors to be considered in evaluating its Contract Clause claim (see Alliance of Am. Insurers v Chu, 77 NY2d 573, 585-586 [1991]), fares no better.

. Indeed, counsel for defendants acknowledged at oral argument that the $70 million in anticipated savings was a “soft number” and that, while the state hoped that retroactive application of the amendment would generate immediate savings, it was unclear how much of that potential savings would be realized in 2010 — much less as a result of contracts formed prior to June 8, 2010.