Matter of Buffalo Teachers Fedn., Inc. v Elia (2018 NY Slip Op 04061)





Matter of Buffalo Teachers Fedn., Inc. v Elia


2018 NY Slip Op 04061


Decided on June 7, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 7, 2018

525485

[*1]In the Matter of BUFFALO TEACHERS FEDERATION, INC., Appellant,
v
MARY ELLEN ELIA, as Commissioner of Education, et al., Respondents, et al., Respondents.

Calendar Date: March 28, 2018

Before: Garry, P.J., McCarthy, Lynch, Clark and Pritzker, JJ.


Robert T. Reilly, New York State United Teachers, Latham (Jennifer N. Coffey of counsel), for appellant.
Barbara D. Underwood, Attorney General, Albany (Robert M. Goldfarb of counsel), for Mary Ellen Elia, and others, respondents.


Lynch, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the Supreme Court (McDonough, J.), entered November 3, 2016 in Albany County, which dismissed petitioner's application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to review three determinations of respondent Commissioner of Education resolving disputes between petitioner and respondent Buffalo Public Schools during their negotiation of a receivership agreement.
In April 2015, the Legislature enacted the Education Transformation Act of 2015, to provide for the "[t]akeover and restructuring of failing schools" (L 2015, ch 56, part EE, subpart H, §§ 1, 2; see Education Law § 211-f). Under the statute, respondent Commissioner of Education is required to categorize those public schools "among the lowest achieving five percent of public schools in the state" as either "failing schools" or "persistently failing schools" (Education Law § 211-f [1] [a], [b])[FN1]. Upon the Commissioner's approval of a comprehensive [*2]education plan, the superintendent of a school district is vested with the authority of a receiver for either one year (for persistently struggling schools) or two years (for struggling schools) (see Education Law § 211-f [1] [c] [i], [ii]; [2] [b]). A receiver is authorized "to manage and operate all aspects of the school" (Education Law § 211-f [2] [a]). Among his or her duties, and "to maximize the rapid achievement of students," a superintendent, as receiver, "may request that the collective bargaining unit or units representing teachers and administrators and the receiver, on behalf of the board of education, negotiate a receivership agreement that modifies the applicable collective bargaining agreement or agreements with respect to any failing schools" (Education Law § 211-f [8] [a]). The statute restricts the subject matter of the receivership agreement to "the length of the school day; the length of the school year; professional development for teachers and administrators; class size; and changes to the programs, assignments, and teaching conditions in the school receivership" (Education Law § 211-f [8] [a]). In the event that the parties are unable to reach an agreement with regard to a struggling school, "unresolved issues" must be submitted to conciliation, and, if issues remain, to the Commissioner for final resolution; unresolved issues regarding a receivership agreement for persistently struggling schools go directly to the Commissioner for resolution (Education Law § 211-f [8] [b] [c]). In either circumstance, the Commissioner has five days to resolve the issues in accord with standard collective bargaining principles (see Education Law § 211-f [8] [b] [c]).
In July 2015, the Commissioner informed respondent Buffalo Public Schools (hereinafter the school district) that 25 of its schools were either persistently struggling or struggling. On August 27, 2015, respondent Kriner Cash, the school district's Superintendent and the person vested with the authority granted by Education Law § 211-f (1) (c) (hereinafter the Superintendent), wrote to petitioner to request that it negotiate a receivership agreement "for schools in receivership." In response, petitioner requested more information — including a list of the affected schools "and the specific modifications [to the collective bargaining agreement] sought for each school" — to allow it to respond to the Superintendent's request. By correspondence dated September 8, 2015, the Superintendent rejected the request and reiterated that petitioner should schedule negotiations with the school district's labor relations representative. On September 25, 2015, the Superintendent sent specific proposals and advised that petitioner had until October 1, 2015 to either accept the proposals or meet to "discuss and respond to these proposals." Petitioner acknowledged receipt, but questioned the Superintendent's deadline, asserting that negotiations had to be completed by November 16, 2015. The school district's labor relations representative disputed petitioner's time calculations, but proposed that the parties meet on October 13 and 14, 2015 to discuss "all issues[,] . . . review the [September 25, 2015] proposals for receivership agreements . . . and receive counterproposals in return" (emphasis added).
The parties met on the two proposed dates and again on October 19 and 22, 2015. By correspondence dated October 23, 2015, petitioner sent counterproposals, including one to reduce class sizes. On October 26, 2015, without reference to petitioner's counterproposals, the Superintendent's labor relations specialist advised that the Superintendent had decided "that it [was] time to take the next step" to "submit[ ] the unresolved issues regarding the proposed [r]eceivership [a]greements to either" a conciliator or the Commissioner, as appropriate. Petitioner directly responded that such a step was "premature," asserted that the time to complete negotiations had not yet run and, alternatively, asked to extend that time to complete [*3]negotiations. There was no response to this request.
On October 28, 2015, the Superintendent sent the Commissioner a request that she "resolve the issues between the [school d]istrict and [petitioner] as they relate to negotiations for a receivership agreement for the [d]istrict's five persistently struggling schools." The Superintendent outlined 10 proposals regarding teaching position vacancies and transfers, the length of the school day and year, daily teacher planning time, professional development for teachers, use of technology in the classroom and additional monthly faculty meetings. Petitioner responded asserting, in part, that the Superintendent did not bargain in good faith and that his proposals violated the applicable regulations and were "unmanageable." Petitioner also requested that the Commissioner consider and accept its October 23, 2015 counterproposals. The Superintendent objected to the consideration of petitioner's counterproposals as untimely. On November 20, 2015, the Superintendent submitted a request for conciliation with respect to the struggling schools pursuant to Education Law § 211-f (8) (c). The parties met on December 8, 2015 and, with the conciliator's assistance, were able to agree on one of the Superintendent's proposals. The Superintendent promptly asked the Commissioner to resolve the remaining issues.
By decision and order dated November 8, 2015, the Commissioner imposed a receivership agreement applicable to the persistently struggling schools. By orders dated December 22, 2015 and March 29, 2016, the Commissioner imposed similar receivership agreements applicable to the struggling schools. Petitioner commenced two separate CPLR article 78 proceedings and actions for declaratory judgment to challenge the orders, and to declare Education Law § 211-d (8) unconstitutional on its face and as applied. With the parties' consent, Supreme Court consolidated the two proceedings. Thereafter, Supreme Court dismissed the petitions and declared Education Law § 211-f (8) constitutional on its face and as applied to petitioner. Petitioner now appeals.
Our review of petitioner's CPLR article 78 claims is limited to whether the Commissioner's determinations, made without a hearing, were "arbitrary and capricious, irrational, affected by an error of law or an abuse of discretion" (Matter of DeVera v Elia, 152 AD3d 13, 18 [2017] [internal quotation marks and citations omitted], lv granted 30 NY3d 907 [2017]; see CPLR 7803 [3]). Further, review "is limited to the grounds invoked by the agency" (Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs., 77 NY2d 753, 758 [1991]), and the "[f]ailure of the agency to set forth an adequate statement of the factual basis for the determination forecloses the possibility of fair judicial review and deprives the petitioner of his [or her] statutory right to such review" (Matter of Montauk Improvement v Proccacino, 41 NY2d 913, 914 [1977]).
First, we find that the Commissioner's determinations included a sufficient factual basis to permit intelligent review. In each of the challenged orders, the Commissioner concluded that two collective bargaining principles were relevant and warranted consideration — "the interests and welfare of the public and the financial ability of the public employer to pay [and] the terms of collective agreements negotiated between the parties in the past providing for compensation and fringe benefits" (Civil Service Law § 209 [4] [c] [v] [b], [d]). With reference to these principles, the Commissioner reviewed the Superintendent's proposals seeking to circumvent seniority provisions so as to ensure that "the most qualified" candidate is selected to fill teaching, summer school, recreational and part-time vacancies, to permit the Superintendent to deny teachers' requests for transfer and to transfer teachers involuntarily from applicable schools, and to allow the Superintendent to schedule mandatory faculty meetings either before or after school. The Commissioner also considered the Superintendent's proposals to lengthen the school day and [*4]year with a proportionate increase in income, to change the start and end time of each school day, and to add additional common planning time for teachers. Also reviewed were the Superintendent's proposals to require teachers "to use all technological tools necessary and appropriate to more effectively communicate with students and parents" and to attend "school- specific" professional development. After comparing the existing negotiated terms of employment and petitioner's responses to each proposal, the Commissioner imposed receivership agreements that incorporated all of the Superintendent's proposals for persistently struggling and struggling schools, albeit with some modifications.
There is no dispute that the existing terms and conditions of employment in the collective bargaining agreement (hereinafter CBA) were a relevant collective bargaining principle to consider. The Commissioner compared each of the proposals to the parties' existing practices and, after consideration of petitioner's responses, altered proposals to limit the Superintendent's discretion and added terms where she believed it would be fairer and more consistent with the existing CBA. Further, and contrary to petitioner's claim, the Commissioner considered the best interests of the students and the purpose of the statute prior to imposing the terms of the receivership agreements. For example, when reviewing the Superintendent's proposals with regard to filling vacancies without strict adherence to seniority provisions, the Commissioner considered petitioner's concerns and concluded that, with the limited time afforded to make improvements, the Superintendent needed flexibility with regard to placing teachers in positions and to lead programs at the affected schools. The Commissioner also considered petitioner's claims that additional faculty meetings, longer school days and longer school years would have no effect on student outcomes. The Commissioner reasoned that more faculty meetings would result in greater communication and allow teachers and administrators to quickly respond to issues as they arise. Citing published research, the Commissioner concluded that, in general, longer school days and years could enhance students' proficiency and their general educational experience. We are mindful that petitioner does not agree with all of the cited research and believes that alternative solutions could be more beneficial. The limited issue before us, however, is whether the Commissioner's determinations were rationally based, even where there are reasonable alternatives (see Matter of Spence v New York State Dept. of Agric. & Mkts., 154 AD3d 1234, 1238 [2017]). For the foregoing reasons, we find that the Commissioner's determinations had a rational basis and were sufficiently detailed to permit adequate review.
We do not agree with petitioner's argument that the Commissioner arbitrarily and in violation of law failed to consider whether the Superintendent bargained in good faith. Generally, a school in receivership "shall operate in accordance with laws regulating other public schools" (Education Law § 211-f [2] [b]). The Public Employment Relations Board was created to "assist in resolving disputes between public employees and public employers" (Civil Service Law § 200), and, for purposes of the Taylor Law (see Civil Service Law art 14), the term "public employer" includes "a school district or any governmental entity operating a public school" (Civil Service Law § 201 [6] [a] [iii]). Here, the Superintendent was akin to a public employer because he had a statutory obligation to negotiate the receivership agreement in good faith on behalf of respondent Board of Education of the Buffalo Public Schools (see Education Law § 211-f [8] [a]). In our view, the Commissioner properly determined that petitioner's claim that the Superintendent failed to negotiate the terms of the receivership agreements in good faith was an unfair labor practice claim subject to the exclusive jurisdiction of the Public Employment Relations Board (see Civil Service Law § 205 [5] [d]; Matter of New York City Tr. Auth. v New York State Pub. Empl. Relations Bd., 19 NY3d 876, 879 [2012]; Matter of Zuckerman v Board of Educ. of City School Dist. of City of N.Y., 44 NY2d 336, 342 [1978]).
Petitioner next contends that the Commissioner erred by failing to consider its counterproposal to reduce class sizes. In each of the challenged orders, the Commissioner determined that the statute "requires the [S]uperintendent . . . to request negotiation of" permissible issues, like class size, but, because the receiver did not request negotiation of class size, it was not an issue for her to resolve. The Commissioner further determined that the Superintendent's request to negotiate was not "proper" until September 25, 2015 and that "the 30 calendar days in which negotiations were to have been completed had elapsed by . . . October 28, 2015," when the Superintendent sought the Commissioner's resolution.
We find that the Commissioner's determination that only the receiver was authorized to propose terms of a receivership agreement was erroneous. Education Law § 211-f (8) (a) authorizes the receiver to request that the parties negotiate a receivership agreement. The receivership agreement, in turn, may only address specified subjects, including class size. This structure authorizes the receiver to initiate a negotiation, but does not limit the issues that the Commissioner may address to those requested in the first instance by the receiver. The existing CBA includes a provision with regard to class size and recognizes that, generally, petitioner and the school district collectively decide appropriate class size. To conclude, in effect, that only one party to the negotiations can define the possible terms of a negotiated receivership agreement does not comport with the statutory language and would undermine the legislative directive that negotiations occur "in good faith" and in accordance with collective bargaining principles (see Education Law § 211-f [8] [b], [c]).
Similarly, we do not agree with the Commissioner's determination that the Superintendent properly disregarded the counterproposals because they were ostensibly submitted after the 30-day period lapsed. No party disputes the finding that the Superintendent's negotiation request was not effective until September 25, 2015. When this request was made, the regulations provided that negotiations had to be completed within 30 school days, not calendar days (see 8 NYCRR former 100.19 [g] [5] [iii] [b] [eff Sept. 1, 2015 to Oct. 26, 2015]; 100.19 [a] [18]). The modification of the regulation on October 27, 2015, changing the time frame to 30 calendar days, does not pertain here (see 8 NYCRR 100.19 [g] [5] [iii] [b]). Generally, a regulation should not be applied retroactively unless such a result is clearly intended (see Matter of Zajdowicz v New York State & Local Police & Fire Retirement Sys., 267 AD2d 863, 865 [1999]). Notably, the record evinces that the parties intended to discuss applicable deadlines during negotiations and does not indicate any agreement to limit negotiations to four sessions within 30 calendar days. The point made is that the "30 school day" window for negotiations was still open when petitioner offered the counterproposals. That the Superintendent chose to terminate the negotiations without responding to the counterproposals does not mean it was not a part of the negotiation process. Accordingly, we conclude that the Commissioner should have considered petitioner's October 23, 2015 counterproposal with regard to class sizes to be an unresolved issue pursuant to Education Law
§ 211-f (8) (b) and (c).
Petitioner's argument that the Commissioner was biased was not preserved for our review. If we were to consider this claim, we would find that, in light of the Commissioner's modifications, her orders "flowed from the evidence presented" and not from any purported bias (Matter of Ashishi v Venettozzi, 155 AD3d 1198, 1199-1200 [2017]; see generally Matter of Defreestville Area Neighborhood Assn., Inc. v Planning Bd. of Town of N. Greenbush, 16 AD3d 715, 723 [2005]).
Turning to the constitutional challenge, petitioner maintains that Education Law § 211-f (8) is constitutionally defective because it impairs its CBA with the school district in violation of [*5]the Contract Clause of the US Constitution. US Constitution, article I, § 10 prohibits a state from passing a law that "impair[s] the [o]bligation of [c]ontracts." Because states "retain the power to safeguard the vital interests of their people," this prohibition is not absolute (HealthNow N.Y., Inc. v New York State Ins. Dept., 110 AD3d 1216, 1218 [2013] [internal quotation marks, brackets and citation omitted]). Three questions must be considered to determine whether a state law violates the Contract Clause: "(1) is the contractual impairment substantial and, if so, (2) does the law serve a legitimate public purpose such as remedying a general social or economic problem and, if such purpose is demonstrated, (3) are the means chosen to accomplish this purpose reasonable and necessary" (Buffalo Teachers Fedn. v Tobe, 464 F3d 362, 368 [2006], cert denied 550 US 918 [2007]; see Sal Tinnerello & Sons, Inc. v Town of Stonington, 141 F3d 46, 52 [1998], cert denied 525 US 923 [1998]; 19th St. Assoc. v State of New York, 79 NY2d 434, 442-443 [1992]; HealthNow N.Y. Inc. v New York State Ins. Dept., 110 AD3d at 1219). Because the parties do not seriously dispute that the statute substantially impairs the existing CBA in furtherance of a legitimate public purpose, the question presented on this appeal is whether the statute was reasonable and necessary to further the significant and legitimate public interest in "maximiz[ing] the rapid achievement of students" at schools deemed to be persistently struggling and struggling (Education Law § 211-f [8] [a]).
Generally, where a statute or regulation impairs a private contract, courts will defer to a legislature's rationale with regard to its necessity (see Energy Reserves Group, Inc. v Kansas Power and Light Co., 459 US 400, 412-413 [1983]). Less deference is warranted where the statute or regulation "is self-serving and impairs the obligations of [the state's] own contracts" because "a [s]tate is not completely free to consider impairing the obligations of its own contracts on a par with other policy alternatives" (Condell v Bress, 983 F2d 415, 418 [2d Cir 1993] [emphasis omitted], cert denied 507 US 1032 [1993]; see 19th St. Assoc. v State of New York, 79 NY2d at 443). Less deference may be warranted even where, as here, the state is not a party to an impaired public contract (see Buffalo Teachers Fedn. v Tobe, 464 F3d at 370). "[F]or an impairment to be reasonable and necessary under less deference scrutiny, it must be shown that the state did not (1) consider impairing the contracts on par with other policy alternatives or (2) impose a drastic impairment when an evident and more moderate course would serve its purpose equally well nor (3) act unreasonably in light of the surrounding circumstances" (id. at 371 [internal quotation marks, ellipses, emphasis and citation omitted]).
Assuming without deciding that the less deferential standard applies, we find that Education Law § 211-f (8) is reasonable and necessary both on its face and as applied. In context, the receivership agreement was necessary in order to implement available methods to address the immediate issues that were facing the struggling or persistent struggling schools. The statute provides that the Superintendent must act in accordance with the existing CBA, and, where, as here, a receivership agreement is requested, the statute limits the scope of the agreement — and impairment. No modification or impairment can be unilaterally imposed but instead must be negotiated. As applied, although an agreement was not reached with regard to all issues, the modifications imposed were applicable to the affected schools only for the time limited by the statute. In sum, because the statute and the agreements apply prospectively and limit the scope, application and duration of any modifications to existing agreements, while prohibiting any adverse financial impact, we find that it was reasonably designed and necessary to further the goal of helping students to succeed (see Buffalo Teachers Fedn. v Tobe, 464 F3d at 372; Matter of Subway-Surface Supervisors Assn. v New York City Tr. Auth., 44 NY2d 101, 113 [1978]). Although petitioner argues that there are means and methods that would be much more effective, the relative wisdom of the statute is not for us to consider (see Home Bldg. & Loan Assn. v Blaisdell, 290 US 398, 447-448 [1934]).
We have considered the parties' remaining arguments and find them to be either without merit or, given the foregoing determinations, not necessary to consider.
Garry, P.J., McCarthy, Clark and Pritzker, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as dismissed petitioner's fourth and fifth causes of action in the consolidated petitions; matter remitted to respondent State Education Department for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: The regulations promulgated under Education Law § 211-f use the terms "struggling school" and "persistently struggling school" interchangeably with "failing school" and "persistently failing school" (8 NYCRR 100.19 [a] [1], [2]). Like the parties, we will also utilize the terms "struggling" and "persistently struggling."