97 Lyman Ave., LLC v MTGLQ Invs., L.P. (2024 NY Slip Op 06611)

97 Lyman Ave., LLC v MTGLQ Invs., L.P.

2024 NY Slip Op 06611

Decided on December 24, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 24, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

JOSEPH J. MALTESE, J.P.
LARA J. GENOVESI
LILLIAN WAN
DONNA-MARIE E. GOLIA, JJ.

2023-06623
 (Index No. 151798/19)

[*1]97 Lyman Avenue, LLC, respondent,
v
MTGLQ Investors, L.P., appellant, et al., defendants.

Knuckles, Komosinski & Manfro, LLP, Elmsford, NY (Louis A. Levithan of counsel), for appellant.
Petroff Amshen LLP, Brooklyn, NY (Steven Amshen and James Tierney of counsel), for respondent.

DECISION & ORDER
In an action, inter alia, pursuant to RPAPL 1501(4) to cancel and discharge of record a mortgage, the defendant MTGLQ Investors, L.P., appeals from an order of the Supreme Court, Richmond County (Wayne M. Ozzi, J.), dated May 12, 2023. The order, insofar as appealed from, upon renewal, vacated an order of the same court dated August 16, 2022, granting that defendant's prior motion pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against it and denying the plaintiff's prior cross-motion, in effect, for summary judgment on the complaint, and thereupon denied the prior motion, in effect, granted the prior cross-motion, and directed the cancellation and discharge of record the subject mortgage.
ORDERED that the order dated May 12, 2023, is affirmed insofar as appealed from, with costs.
In June 2007, nonparty Thomas Cush executed a consolidated note in the sum of $333,750 in favor of Countrywide Home Loans, Inc. The note was secured by a consolidated mortgage executed by Cush and nonparties Julianna Noftell and Thomas Noftell (hereinafter together the Noftells, and together with Cush, the borrowers) encumbering certain property located in Staten Island (hereinafter the subject property). The borrowers also entered into a consolidation, extension, and modification agreement in favor of Countrywide Home Loans, Inc., which consolidated a number of prior mortgages into a single lien on the subject property.
In July 2010, nonparty BAC Home Loans Servicing, L.P. (hereinafter BAC), the predecessor in interest of the defendant MTGLQ Investors, L.P. (hereinafter MTGLQ), commenced an action against the borrowers, among others, to foreclose the mortgage, in which BAC elected to call due the entire outstanding balance of the mortgage, thereby accelerating the mortgage (hereinafter the 2010 foreclosure action). In March 2013, the 2010 foreclosure action was voluntarily discontinued by BAC. In June 2017, after a series of assignments, the mortgage was assigned to MTGLQ.
Thereafter, in November 2018, MTGLQ commenced an action against the Noftells, among others, to foreclose the mortgage (hereinafter the 2018 foreclosure action). In November [*2]2018, the borrowers conveyed the subject property to the plaintiff, 97 Lyman Avenue, LLC (hereinafter 97 Lyman).
In February 2019, MTGLQ moved, in effect, for leave to enter a default judgment and for an order of reference. While MTGLQ's motion was pending, in May 2019, 97 Lyman moved pursuant to CPLR 1012(a)(2), (3), and 1013 for leave to intervene in the 2018 foreclosure action.
In an order dated June 24, 2019, the Supreme Court denied 97 Lyman's motion for leave to intervene in the 2018 foreclosure action. In a separate order, also dated June 24, 2019, the court granted MTGLQ's motion, in effect, for leave to enter a default judgment and for an order of reference, and appointed a referee to compute the amount due to MTGLQ. 97 Lyman appealed from both orders. This Court determined that the Supreme Court properly denied 97 Lyman's motion for leave to intervene in the 2018 foreclosure action and dismissed 97 Lyman's appeal from the order which granted MTGLQ's motion, in effect, for leave to enter a default judgment and for an order of reference for lack of aggrievement (see MTGLQ Invs., L.P. v Noftell, 204 AD3d 786, 786-787).
In July 2019, 97 Lyman commenced the instant action against MTGLQ, among others, inter alia, pursuant to RPAPL 1501(4) to cancel and discharge of record the mortgage. In April 2022, MTGLQ moved pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against it. 97 Lyman opposed the motion and cross-moved, in effect, for summary judgment on the complaint. In an order dated August 16, 2022 (hereinafter the August 2022 order), the Supreme Court granted MTGLQ's motion and denied 97 Lyman's cross-motion.
In February 2023, 97 Lyman moved for leave to renew its opposition to MTGLQ's motion pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against it and, in effect, its cross-motion, in effect, for summary judgment on the complaint based upon the enactment of the Foreclosure Abuse Prevention Act (hereinafter FAPA). MTGLQ opposed the motion, arguing, among other things, that the retroactive application of FAPA was an unconstitutional violation of its due process rights and violated the Contract Clause of the United States Constitution. In an order dated May 12, 2023, the Supreme Court granted leave to renew and, upon renewal, vacated the August 2022 order, and thereupon denied MTGLQ's motion and, in effect, granted 97 Lyman's cross-motion, and directed the cancellation and discharge of record the mortgage. The court determined, in effect, that the retroactive application of FAPA was constitutional. MTGLQ appeals.[FN1]
The Supreme Court, upon renewal, properly denied MTGLQ's motion to dismiss the complaint insofar as asserted against it and properly, in effect, granted 97 Lyman's cross-motion, in effect, for summary judgment on the complaint, as the 2018 foreclosure action was untimely. An action to foreclose a mortgage is governed by a six-year statute of limitations (see id. § 213[4]). "'[E]ven if a mortgage is payable in installments, once a mortgage debt is accelerated, the entire amount is due and the Statute of Limitations begins to run on the entire debt'" (U.S. Bank N.A. v Medianik, 223 AD3d 935, 937, quoting BHMPW Funding, LLC v Lloyd-Lewis, 194 AD3d 780, 782; see U.S. Bank NA v Schaer, 223 AD3d 928, 929; U.S. Bank Trust, N.A. v Reizes, 222 AD3d 907, 909). "Acceleration occurs, inter alia, by the commencement of a foreclosure action wherein the holder of the note elects in the complaint to call due the entire amount secured by the mortgage" (U.S. Bank NA v Schaer, 223 AD3d at 929; see GMAT Legal Title Trust 2014-1 v Kator, 213 AD3d 915, 916). "Pursuant to RPAPL 1501(4), a person having an estate or interest in real property subject to a mortgage may maintain an action to secure the cancellation and discharge of the encumbrance, and to adjudge the estate or interest free of it, if the applicable statute of limitations for commencing a foreclosure action has expired" (U.S. Bank N.A. v Medianik, 223 AD3d at 938; see U.S. Bank NA v Schaer, 223 AD3d at 929).
In response to Freedom Mtge. Corp. v Engel (37 NY3d 1, 31), in which the Court of Appeals held that "when a bank effectuated an acceleration via the commencement of a foreclosure action, a voluntary discontinuance of that action—i.e., the withdrawal of the complaint—constitutes a revocation of that acceleration," the Legislature, in December 2022, enacted FAPA (L 2022, ch 821 [eff Dec. 30, 2022]). As relevant to this appeal, FAPA amended CPLR 3217(e) to provide that, "[i]n any action on an instrument described under [CPLR 213(4)], the voluntary discontinuance of such action, whether on motion, order, stipulation or by notice, shall not, in form or effect, waive, postpone, cancel, toll, extend, revive or reset the limitations period to commence an action and to interpose a claim, unless expressly prescribed by statute" (see L 2022, ch 821 § 8).
Applying FAPA here, the voluntary discontinuance of the 2010 foreclosure action by MTGLQ's predecessor in interest did not serve to de-accelerate the mortgage nor did it "revive or reset" the statute of limitations (CPLR 3217[e]; see U.S. Bank NA v Schaer, 223 AD3d at 929-930; U.S. Bank Trust, N.A. v Reizes, 222 AD3d at 909-910). Since MTGLQ commenced the 2018 foreclosure action more than six years after the initial acceleration of the mortgage, applying FAPA, the applicable statute of limitations for commencing a foreclosure action has expired (see Anglestone Real Estate Venture Partners Corp. v Bank of N.Y. Mellon, 221 AD3d 943, 947; Aspen Props. Group, LLC v Preston, 219 AD3d 1475, 1477).
Contrary to MTGLQ's contention, FAPA was intended to apply retroactively to cases like this one. FAPA provides that it "shall take effect immediately and shall apply to all actions commenced on an instrument described under [CPLR 213(4)] in which a final judgment of foreclosure and sale has not been enforced" (L 2022, ch 821 § 10). In doing so, the Legislature evinced a sense of urgency in enacting FAPA, as indicated by the Sponsor Memorandum in Support, which provides that FAPA "is a response to the Court of Appeals recent holding in Freedom Mtge. Corp. v Engel," and that it "will restore longstanding law that made it clear that a lenders' discontinuance of a foreclosure action that accelerated a mortgage loan does not serve to reset the statute of limitations" (Assembly Mem in Support, Bill Jacket, L 2022, ch 821 at 9).
Indeed, while a lender may revoke the acceleration of a mortgage upon an affirmative act (see Federal Natl. Mtge. Assn. v Schmitt, 172 AD3d 1324, 1325; Bank of N.Y. Mellon v Craig, 169 AD3d 627, 629; EMC Mtge. Corp. v Patella, 279 AD2d 604, 606; Federal Natl. Mtge. Assn. v Mebane, 208 AD2d 892, 894), this Court had consistently held before Freedom Mtge. Corp. v Engel, that a voluntary discontinuance of a mortgage foreclosure action did not constitute an affirmative act of revocation of an accelerated mortgage (see Christiana Trust v Barua, 184 AD3d 140, 146-147; HSBC Bank, N.A. v Vaswani, 174 AD3d 514, 515; Aquino v Ventures Trust 2013-I-H-R by MCM Capital Partners, 172 AD3d 663, 664). Therefore, to the extent that our dissenting colleague finds that the retroactive application of FAPA disrupts any substantial rights pursuant to Freedom Mtge. Corp. v Engel, FAPA, in essence, codified the previously long-standing rule that a lender cannot revoke the acceleration of a mortgage and reset the statute of limitations by voluntarily discontinuing a mortgage foreclosure action (see Bank of N.Y. Mellon v Yacoob, 182 AD3d 566, 567-568; HSBC Bank, N.A. v Vaswani, 174 AD3d at 515; U.S. Bank Trust, N.A. v Aorta, 167 AD3d 807, 808-809). Thus, contrary to MTGLQ's contention, FAPA is remedial in nature and was intended to apply retroactively where, as here, a final judgment of foreclosure and sale has not been enforced (see Bayview Loan Servicing, LLC v Dalal, _____ AD3d _____, _____ 2024 NY Slip Op 05767, * 2 [1st Dept]; Genovese v Nationstar Mtge. LLC, 223 AD3d 37, 44; Matter of Mia S. [Michelle C.], 212 AD3d 17, 22; Nelson v HSBC Bank USA, 87 AD3d 995, 997-998).
MTGLQ's contention that the retroactive application of FAPA violates the Due Process Clause of the United States Constitution is unpersuasive. "[T]he test of due process for retroactive legislation 'is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose'" (American Economy Ins. Co. v State of New York, 30 NY3d 136, 158, quoting Pension Benefit Guaranty Corporation v R.A. Gray & Co., 467 US 717, 730; see Matter of Regina Metro Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332, 375). We conclude, and our dissenting colleague agrees, that the legislative purpose of FAPA, "to thwart and eliminate abusive and unlawful litigation tactics" (Assembly Mem in Support, Bill Jacket, L 2022, ch 821 at 8), is a legitimate purpose. Accordingly, MTGLQ failed to [*3]establish that the retroactive application of FAPA violated its rights pursuant to the Due Process Clause (see American Economy Ins. Co. v State of New York, 30 NY3d at 158; Wilmington Trust, N.A. v Farkas, _____ AD3d _____, 2024 NY Slip Op 05841 [1st Dept]; Bayview Loan Servicing, LLC v Dalal, _____ AD3d _____, _____ , 2024 NY Slip Op 05767, * 2-3; U.S. Bank N.A. v Lynch,_____ AD3d _____ , _____ , 2024 NY Slip Op 05261, * 3 [3d Dept]).
Nor is MTGLQ's contention that the retroactive application of FAPA violates the Contract Clause of the United States Constitution availing (see Matter of Raynor v Landmark Chrysler, 18 NY3d 48, 58; Consumers Union of U.S., Inc. v State of New York, 5 NY3d 327, 358-359; Bayview Loan Servicing, LLC v Dalal, _____ AD3d at _____, 2024 NY Slip Op 05767, * 3). Contrary to our dissenting colleague's position that MTGLQ or its predecessor in interest implicitly retained the right to revoke the acceleration, the explicit terms of the mortgage agreement did not grant MTGLQ or its predecessor in interest the right to revoke the acceleration of the mortgage (see 159 MP Corp. v Redbridge Bedford, LLC, 33 NY3d 353, 358; cf. Milone v US Bank N.A., 164 AD3d 145, 155). Since the terms of the mortgage agreement are clear and unambiguous and did not grant MTGLQ or its predecessor in interest the right to revoke the acceleration, "'courts should be especially reluctant to interpret an agreement as impliedly stating something which the parties specifically did not include'" (PSCW, Inc. v Monaco, 216 AD3d 820, 822, quoting Donohue v Cuomo, 38 NY3d 1, 12; see Loughlin v Meghji, 186 AD3d 1633, 1639).
MTGLQ's contention that the retroactive application of FAPA violates the Takings Clause of the Fifth Amendment of the United States Constitution is improperly raised for the first time on appeal (see Citibank, N.A. v Horan, 230 AD3d 1216, 1219; South Point, Inc. v John, 230 AD3d 825, 827).
The parties' remaining contentions either need not be reached in light of our determination, have been rendered academic, or are improperly raised for the first time on appeal.
GENOVESI, WAN and GOLIA, JJ., concur.
MALTESE, J.P., dissents, and votes to reverse the order dated May 12, 2023, insofar as appealed from, on the law, and, upon renewal, to adhere to the determinations in the order dated August 16, 2022, granting the prior motion of the defendant MTGLQ Investors, L.P., pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against it and denying the plaintiff's prior cross-motion, in effect, for summary judgment on the complaint, with the following memorandum:
In this appeal in a mortgage foreclosure action, the defendant MTGLQ Investors, L.P. (hereinafter MTGLQ), raises constitutional challenges to the retroactive application of certain provisions of the Foreclosure Abuse Prevention Act (L 2022, ch 821 [eff Dec. 30, 2022] [hereinafter FAPA]), which affect a lender's ability to revoke its acceleration of mortgage debt. I find that, as applied to the facts of this case, the retroactive application of FAPA violates the constitutional right to due process and the Contract Clause of the United States Constitution, and therefore FAPA may not be applied retroactively in this case.
I. Factual and Procedural Background
In June 2007, nonparty Thomas Cush executed and delivered to nonparty Countrywide Home Loans, Inc. (hereinafter Countrywide) a consolidated note in the sum of $333,750. The consolidated note was secured by a consolidated mortgage given by Cush and nonparties Julianna Noftell and Thomas Noftell (hereinafter together the Noftells, and, together with Cush, the borrowers) on certain real property located at 97 Lyman Avenue in Staten Island (hereinafter the subject property). On the same date, the borrowers entered into a consolidation, extension, and modification agreement in favor of Countrywide, which consolidated a number of prior mortgages into a single lien on the subject property.
In 2010, nonparty BAC Home Loans Servicing, L.P. (hereinafter BAC), commenced an action against the borrowers, among others, to foreclose the consolidated mortgage, calling due [*4]the entire amount of the debt in the complaint, and alleging that the borrowers defaulted in making payments due on September 1, 2009, and thereafter (hereinafter the 2010 foreclosure action). In March 2013, BAC discontinued the 2010 foreclosure action "due to reinstatement" of the mortgage.
In June 2017, BAC's successor in interest assigned the consolidated mortgage to MTGLQ. In November 2018, MTGLQ commenced an action against the Noftells, among others, to foreclose the consolidated mortgage, that was reinstated in 2013, alleging that the Noftells defaulted in making payments due on January 1, 2011, and thereafter (hereinafter the 2018 foreclosure action). MTGLQ filed a notice of pendency at the time of commencement.
In November 2018, the Noftells, without the consent of the lender or successor lender MTGLQ and in violation of the mortgage agreement, transferred the subject property to the plaintiff, 97 Lyman Avenue, LLC (hereinafter 97 Lyman). MTGLQ moved, in effect, for leave to enter a default judgment and for an order of reference. 97 Lyman moved for leave to intervene in the 2018 foreclosure action. The Supreme Court granted MTGLQ's motion and, in a separate order, denied 97 Lyman's motion. This Court affirmed the order denying 97 Lyman's motion for leave to intervene and dismissed the appeal from the order granting MTGLQ's motion, in effect, for leave to enter a default judgment and for an order of reference (see MTGLQ Invs., L.P. v Noftell, 204 AD3d 786, 787).
Nonetheless, in July 2019, 97 Lyman commenced this action against MTGLQ, among others, inter alia, to cancel and discharge of record the consolidated mortgage. MTGLQ moved pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against it. 97 Lyman cross-moved, in effect, for summary judgment on the complaint. In an order dated August 16, 2022, the Supreme Court granted MTGLQ's motion and denied 97 Lyman's cross-motion.
In 2023, 97 Lyman moved for leave to renew its opposition to MTGLQ's motion and, in effect, to renew its cross-motion, based on a change in the law due to the enactment of FAPA. In an order dated May 12, 2023, the Supreme Court granted leave to renew and, upon renewal, determined that the relevant FAPA provisions rendered the 2018 foreclosure action untimely. The court denied MTGLQ's motion to dismiss, in effect, granted 97 Lyman's cross-motion, in effect, for summary judgment on the complaint, and directed the cancellation and discharge of the consolidated mortgage. MTGLQ appeals.
Contrary to my colleagues in the majority, I find that the relevant provisions of FAPA are unconstitutional as applied to these facts and, therefore, the 2018 foreclosure action was not time-barred. Consequently, the Supreme Court, upon renewal, should have adhered to the determinations in the order dated August 16, 2022, granting MTGLQ's motion pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against it and denying 97 Lyman's cross-motion, in effect, for summary judgment on the complaint.
II. Analysis
"Pursuant to RPAPL 1501(4), a person having an estate or interest in real property subject to a mortgage may maintain an action to secure the cancellation and discharge of the encumbrance, and to adjudge the estate or interest free of it, if the applicable statute of limitations for commencing a foreclosure action has expired" (U.S. Bank N.A. v Medianik, 223 AD3d 935, 938; see Ditmid Holdings, LLC v JPMorgan Chase Bank, N.A., 180 AD3d 1002, 1003).
An action to foreclose a mortgage is governed by a six-year statute of limitations (see CPLR 213[4]). "'[E]ven if a mortgage is payable in installments, once a mortgage debt is accelerated, the entire amount is due and the Statute of Limitations begins to run on the entire debt'" (U.S. Bank N.A. v Medianik, 223 AD3d at 937, quoting BHMPW Funding, LLC v Lloyd-Lewis, 194 AD3d 780, 782). "'Acceleration occurs, inter alia, by the commencement of a foreclosure action wherein the [holder of the note] elects in the complaint to call due the entire amount secured by the [*5]mortgage'" (id., quoting GMAT Legal Title Trust 2014-1 v Kator, 213 AD3d 915, 916).
In Freedom Mtge. Corp. v Engel (37 NY3d 1, 19), the Court of Appeals "[a]dopt[ed] a clear rule that will be easily understood by the parties and can be consistently applied by the courts." The Court held that "where the maturity of the debt has been validly accelerated by commencement of a foreclosure action, the noteholder's voluntary withdrawal of that action revokes the election to accelerate, absent the noteholder's contemporaneous statement to the contrary" (id.). The Court of Appeals noted that this issue "involve[s] the intersection of two areas of law where the need for clarity and consistency are at their zenith: contracts affecting real property ownership and the application of the statute of limitations" (id.).
In 2022, the Legislature enacted, and the Governor signed into law, FAPA. Among other things, FAPA amended CPLR 3217, governing the voluntary discontinuance of an action, by adding a new paragraph (e), which specifically affects mortgage foreclosure actions and provides that "[i]n any action on an instrument described under [CPLR 213(4)], the voluntary discontinuance of such action, whether on motion, order, stipulation or by notice, shall not, in form or effect, waive, postpone, cancel, toll, extend, revive or reset the limitations period to commence an action and to interpose a claim, unless expressly prescribed by statute." FAPA also amended CPLR 213(4) by adding, among other things, paragraph (a), which provides that "[i]n any action on an instrument described under this subdivision, if the statute of limitations is raised as a defense, and if that defense is based on a claim that the instrument at issue was accelerated prior to, or by way of commencement of a prior action, a plaintiff shall be estopped from asserting that the instrument was not validly accelerated, unless the prior action was dismissed based on an expressed judicial determination, made upon a timely interposed defense, that the instrument was not validly accelerated" (see GMAT Legal Title Trust 2014-1 v Kator, 213 AD3d at 916-917).
The Legislature's purpose in enacting FAPA was to "thwart and eliminate abusive and unlawful litigation tactics that have been adopted and pursued in mortgage foreclosure actions" and to prevent mortgage lenders and loan services from "manipulat[ing] statutes of limitation to their advantage" (Assembly Mem in Support, Bill Jacket, L 2022, ch 821 at 8). The Legislature provided that FAPA "shall take effect immediately and shall apply to all actions commenced on an instrument described under [CPLR 213(4)] in which a final judgment of foreclosure and sale has not been enforced" (L 2022, ch 821, § 10). This Court has applied the provisions of FAPA retroactively in appeals where the parties did not raise arguments regarding FAPA's constitutionality (see U.S. Bank N.A. v Caldwell, 226 AD3d 1060; HSBC Bank USA, N.A. v MD A. Islam, 221 AD3d 672, 674). Until now, however, this Court has not addressed the issue of FAPA's constitutionality because, in other appeals where the parties raised such challenges on appeal, unlike here, the parties did not have the opportunity to do so before the Supreme Court because the orders appealed from predated the enactment of FAPA.
The Appellate Division, First and Third Departments, recently determined that the retroactive application of FAPA to foreclosure actions where a final judgment has not been enforced does not violate the right to due process (see Bayview Loan Servicing, LLC v Dalal, _____ AD3d _____, 2024 NY Slip Op 05767 [1st Dept]; U.S. Bank N.A. v Lynch, _____ AD3d _____, 2024 NY Slip Op 05261 [3d Dept]), and the First Department further held that the retroactive application of FAPA does not violate the Contract Clause of the United States Constitution (see Bayview Loan Servicing, LLC v Dalal, _____ AD3d _____, 2024 NY Slip Op 05767).
I respectfully disagree and find that, under the circumstances of this case, the retroactive application of CPLR 3217(e) and 213(4) violates both the constitutional right to due process and the Contract Clause of the United States Constitution as applied here.
Here, in support of its cross-motion, in effect, for summary judgment on the complaint, 97 Lyman demonstrated, prima facie, that the six-year statute of limitations began to run in July 2010, when BAC, MTGLQ's predecessor in interest, commenced the 2010 foreclosure action and elected in the complaint to call due the entire amount secured by the consolidated mortgage (see U.S. Bank N.A. v Medianik, 223 AD3d at 938; see also U.S. Bank N.A. v Doura, 204 AD3d 721, [*6]723). 97 Lyman further demonstrated that the 2018 foreclosure action was commenced in October 2018, more than six years later (see U.S. Bank N.A. v Medianik, 223 AD3d at 938; see also U.S. Bank N.A. v Doura, 204 AD3d at 723). If CPLR 3217(e) and 203(h) were applied retroactively, the voluntary discontinuance of the 2010 foreclosure action would not serve to reset the statute of limitations, and 97 Lyman would be entitled to summary judgment on the complaint (see U.S .Bank N.A.v Caldwell, 226 AD3d 1060; HSBC Bank USA, N.A. v MD A. Islam, 221 AD3d at 674).
Due Process
"To comport with the requirements of due process, retroactive application of a newly enacted provision must be supported by a legitimate legislative purpose furthered by rational means" (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332, 375 [internal quotation marks omitted]). "[L]egislative direction concerning the scope of a statute carries a presumption of constitutionality, and the party challenging that direction bears the burden of showing the absence of a rational basis justifying retroactive application of the statute" (id.). Nevertheless, "retroactive legislation does have to meet a burden not faced by [purely prospective] legislation," which is satisfied when "the retroactive application of the legislation is itself justified by a rational legislative purpose" (Pension Benefit Guaranty Corporation v R.A. Gray & Co., 467 US 717, 730). Because "[r]etroactive legislation presents problems of unfairness that are more serious than those posed by prospective legislation the justifications for [prospective legislation] may not suffice for the [retroactive aspects]" (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 375 [citation and internal quotation marks omitted]). "[I]n order to comport with due process, there must be a 'persuasive reason' for the 'potentially harsh' impacts of retroactivity" (id., quoting Holly S. Clarendon Trust v State Tax Commn., 43 NY2d 933, 935). "In determining whether retroactive application of a statute is supported by a rational basis, the relationship between the length of the retroactivity period and its purpose is critical" (id. at 376).
Here, the retroactivity period, applying to the discontinuance of a mortgage foreclosure action over a decade ago, is "vast" (see id. at 375; James Sq. Assoc. LP v Mullen, 21 NY3d 233). Moreover, retroactivity concerns are further heightened where, as here and as discussed further below, the new statutory provisions "affect[ ] contractual or property rights, matters in which predictability and stability are of prime importance" (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 382 [internal quotation marks omitted]).
Although the stated purpose of FAPA, "to thwart and eliminate abusive and unlawful litigation tactics" (Assembly Mem in Support, Bill Jacket, L 2022, ch 821 at 8), is a legitimate purpose, the retroactive application of CPLR 3217(e) and 203(h) is not a rational means by which to further that purpose in this case, as the facts of this case illustrate. During the pendency of the 2010 foreclosure action, the Supreme Court granted BAC's application to discontinue the foreclosure action and cancel the notice of pendency due to the reinstatement of the mortgage, and the action was dismissed on March 19, 2013. This occurred years before the six-year statute of limitations would have expired. The mortgagors were thereby given an opportunity to save their home by resuming payments on the mortgage note, which they apparently did, but once again stopped in January 2011 in violation of the mortgage contract. The mortgage was subsequently assigned to MTGLQ, which commenced a second mortgage foreclosure action against the Noftells, among others. Rather than answering the complaint and defending the foreclosure action, the Noftells transferred the deed to the subject property that was collateral for the mortgage loan to 97 Lyman, a limited liability company, while a notice of pendency was on file and contrary to paragraph 18 of the mortgage agreement, which permitted the mortgagee, MTGLQ, to seek payment in full if the borrowers transferred the property without the mortgagee's prior written permission. My colleagues in the majority do not address the fact that there is no indication in the record that MTGLQ ever gave consent to transfer title to its collateral without paying the balance of the loan.
Thus, rather than protect individual homeowners from manipulative practices by lenders, the retroactive application of FAPA in this case would enable borrowers to abuse the foreclosure process and would discourage plaintiff-lenders from discontinuing mortgage foreclosure [*7]actions and de-accelerating loans to permit borrowers to resume making mortgage payments and thereby saving their homes from foreclosure. Retroactive application here "simply punishe[s] [MTGLQ] more harshly for behavior that already occurred and that [it] could not alter" (James Sq. Assoc. LP v Mullen, 21 NY3d at 250; see Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d at 378-379).
Contract Clause
Furthermore, as applied retroactively here, FAPA violates the Contract Clause of the United States Constitution. The Contract Clause "'prohibits states from enacting [l]aw[s] impairing the Obligation of Contracts'" (American Economy Ins. Co. v State of New York, 30 NY3d 136, 149, quoting Matter of Raynor v Landmark Chrysler, 18 NY3d 48, 58 [internal quotation marks omitted]; see US Const, art I, § 10[1]). "The Supreme Court has repeatedly held that this language should not be read literally and that the States retain the power to safeguard the vital interests of [their] people" (19th St. Assoc. v State of New York, 79 NY2d 434, 442 [internal quotation marks omitted]). "The threshold inquiry is whether the state law has, in fact, operated as a substantial impairment of a contractual relationship" (id. [internal quotation marks omitted]). The initial inquiry contains "three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial" (American Economy Ins. Co. v State of State of New York, 30 NY3d at 150 [internal quotation marks omitted]).
The retroactive application of FAPA substantially impairs the contractual relationship between mortgagors and mortgagees by interfering with the contractual rights grounded in the mortgage. Even where the right to de-accelerate the debt is not explicitly set forth in the mortgage, "the lender's right to revoke an acceleration of the mortgage debt is grounded in the contractual relationship between lender and borrower, and more specifically in an optional/discretionary acceleration provision of the kind present in the Note and Mortgage here" (U.S. Bank N.A. v Speller, 80 Misc 3d 1233[A], 2023 NY Slip Op 51153[U], *6-7 [Sup Ct, Putnam County] [emphasis omitted]; see Milone v US Bank N.A., 164 AD3d 145, 155). In Milone v US Bank N.A. (164 AD3d at 155), this Court rejected the plaintiff's contention that de-acceleration was not contractually permitted under the note. Similarly, here, "[s]ince the plain language setting forth the contractual right of the lender to accelerate the entire debt is discretionary rather than mandatory, [the lender] maintained the right to later revoke the acceleration" (id.). Applying FAPA retroactively substantially impairs that right.
"Even if a contract has in fact been impaired, the State may avoid a finding of unconstitutional impairment by demonstrating the existence of a significant and legitimate public purpose . . . such as the remedying of a broad and general social or economic problem" (19th St. Assoc. v State of New York, 79 NY2d at 443 [internal quotation marks omitted]). "Once a legitimate public purpose is identified, the inquiry shifts to whether the legislation at issue is based upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption" (id. [internal quotation marks omitted]).
Here, the substantial impairment of the contractual relationship is not reasonable, appropriate, or justified by the Legislature's purpose of thwarting unlawful litigation tactics and preventing mortgage lenders and loan services from "manipulat[ing] statutes of limitation to their advantage." The record reflects that the 2010 foreclosure action was discontinued by the agreement of the parties in order to reinstate the mortgage and give the borrowers the opportunity to avoid the foreclosure sale of their property, not in order to manipulate the statute of limitations. The retroactive application of FAPA under these circumstances would permit borrowers to use it as a sword to avoid the terms of mortgage agreements.
Consequently, CPLR 3217(e) and 213(4), as amended by FAPA, should not be applied retroactively because these provisions, as applied to the facts of this case, violate the right to due process and the Contract Clause of the United States Constitution.
Accordingly, I vote to reverse the order dated May 12, 2023, insofar as appealed from, [*8]and, upon renewal, adhere to the prior determinations granting MTGLQ's motion pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against it and denying 97 Lyman's cross-motion, in effect, for summary judgment on the complaint.
ENTER:
Darrell M. Joseph
Clerk of the Court

Footnotes

Footnote 1: On February 14, 2024, MTGLQ served the New York State Attorney General pursuant to Executive Law § 71 and CPLR 1012, and, by letter, the Attorney General declined to intervene in this instant appeal and stated that the Attorney General has previously intervened to defend the constitutionality of FAPA in other actions.